OPINION
{¶ 1} Appellant, David Miller ("David"), appeals the June 11, 2003 decision and findings of fact and final judgment granting a decree of divorce entered by the Common Pleas Court of Marion County.
 {¶ 2} David and Pamela Miller ("Pamela") were married on August 15, 1970. One child, Katherine Miller ("Katie") was born during the marriage on January 8, 1989. Pamela worked as a school teacher and supported David while he attended medical school. After completion of medical school, David pursued residency in urology and acquired board certification in this specialty. After Katie was born, the parties agreed that Pamela would stop working and stay home to care for their daughter. However, Pamela was a part-time manager of David's medical practice for several years. As David's income increased and the parties acquired substantial real estate investments, Pamela assumed responsibilities for management of these rental properties as well.
 {¶ 3} In 1980, David established a private practice in Marion, Ohio. In 1998, the last year that David was self-employed, he earned $254,625. David then joined a larger practice and became a stockholder of Marion Independent Physician's Association ("MIPA"). In 1999, David earned $362,777; in 2000, he earned $355,037; and in 2001, he earned $356,309. David also became a member of various business entities, including the American Kidney Stone Center, which provided additional income.
 {¶ 4} David's income and the successful investments managed by Pamela allowed the parties to enjoy a lifestyle that was described by the trial court as luxurious. The parties acquired substantial quantities of antiques and other valuable collectibles. In total, the parties acquired real estate, investments and retirement plans worth over $4,500,000.
 {¶ 5} During the marriage, David participated in extramarital affairs, one of which led to the birth of a daughter, Melissa Heslep ("Melissa"). David subsequently acknowledged paternity of Melissa and began paying child support in the amount of approximately $2,600 per month. David paid over $412,516 for support of Melissa during the course of the marriage. David became close to Melissa and her mother, Nancy Heslep, after he and Pamela separated. David has expressed his desire to have Melissa and Katie spend time together, as they are half-sisters.
 {¶ 6} Pamela filed for divorce on January 4, 2001, in the Common Pleas Court of Franklin County, Division of Domestic Relations. The action was transferred to the Common Pleas Court of Marion County on May 24, 2001, and a visiting judge was appointed to hear the matter. The first hearing for the case was heard on December 17, 2001, at which time the trial court accepted an oral agreement of the parties regarding the division of marital assets and liabilities. This agreement was subsequently reduced to a series of agreed partial judgment entries and stipulations. The matter was scheduled for trial on January 14, 2002 for determination of custody, child and spousal support and attorney's fees issues.
 {¶ 7} On the evening of December 17, 2001, after agreeing in open court earlier that day to a property settlement, David called his psychiatrist, Dr. DeMuth, and explained that he was depressed and anxious regarding the outcome of the case and could no longer work. David had been seen by Dr. DeMuth a number of times prior to the telephone call on December 17, 2001, although David had not previously shown any difficulty working, had not been diagnosed with a serious condition, and had only seen Dr. DeMuth once in the preceding six months. Several weeks later, David called Dr. DeMuth again and explained that he had been considering taking a disability leave.
 {¶ 8} At the hearing on January 14, 2002, David appeared and announced, through his attorneys, that he was "disabled" and intended to suspend his practice of medicine. At the time of his announcement, David was in otherwise good physical health and had not given any notice to his employer that he intended to claim disability. David resigned from MIPA and sent his patients letters stating that he would not be practicing "for a short period for personal reasons." Following his resignation, David was seen by Dr. DeMuth infrequently and sought little or no treatment for his alleged condition. In fact, David attended golf school, traveled with Nancy Heslep, participated in a pharmaceutical forum in Florida and took continuing medical education courses.
 {¶ 9} A final hearing on the matter has held on May 20, 2003, at which time the parties executed agreed partial judgment entries upon the issues of parental rights and responsibilities and division of marital assets and liabilities. The trial court heard testimony from David and Pamela, as well as the guardian ad litem, the court-appointed psychologist, David's doctors, the parties' accountants, a former employee of David, Nancy Heslep and other witnesses. On June 11, 2003, the trial court issued a decision and findings of fact and a final judgment entry — decree of divorce, which incorporated all of the prior agreements between the parties. The trial court awarded spousal support to Pamela payable in a lump sum of $245,000 from the property division and awarded attorney's fees of $125,000 to Pamela. It is from this judgment that David now appeals, asserting the following four assignments of error.
The court erred by not ensuring parenting time for Katie andDavid Miller in accordance with the guidelines for the MarionCounty domestic courts without due cause.
 The court erred in evaluation of the testimony and theresultant conclusion to award lump sum support.
 The court erred by not upholding the substantial rights ofDavid Miller. The court failed to ensure equal distribution ofmarital assets as per agreement.
 The court erred in awarding $125,000.00 in attorney fees tothe plaintiff.
 {¶ 10} We have chosen to address the first and third assignments of error together, as they present similar issues for this court to consider. In his first assignment of error, David asserts that the trial court did not grant parenting time in accordance with the Marion County Domestic Relations Court guidelines and failed to recognize parental alienation as a key factor. While David acknowledges that he entered into an agreement regarding visitation with Katie, David argues that he was unaware that such agreement would bind him. In his third assignment of error, David alleges that the court failed to ensure an equal distribution of marital assets, as per agreement of the parties. Both assignments of error address agreements of the parties during the divorce proceedings that were adopted by the court in its final decision and findings of fact.
 {¶ 11} It has been established since early in this state's history that a party participating in a consent judgment will not be allowed to appeal errors from that judgment. SanitaryCommercial Serv., Inc. v. Shank (1991), 57 Ohio St.3d 178, 181,566 N.E.2d 1215, citing Wells v. Martin Co. (1853),1 Ohio St. 386, paragraph one of the syllabus, 1865 WL 40. "It is immaterial what induced the parties to consent to the judgment; it was sufficient that the consent was given. The jurisdiction and authority of a court to render such judgment in the case is not questioned." Jackson v. Jackson (1865), 16 Ohio St. 163,166, 1865 WL 9. More recently, in Tradesman Internatl. Inc. v.Kahoe (Mar. 16, 2000), 8th Dist. No. 74420, unreported, 2000 WL 283081, *7, this principle was reiterated:
A party to a consent decree or other judgment entered byconsent may not appeal unless it explicitly reserves the right toappeal. The purpose of a consent judgment is to resolve a disputewithout further litigation, and so would be defeated or at leastimpaired by an appeal. The presumption, therefore, is that theconsent operates as a waiver of the right to appeal. It isbecause the parties should not be left guessing about thefinality and hence efficacy of the settlement that anyreservation of a right to appeal should be explicit.
 Tradesman Interntl., 2000 WL 283081, at *7, quoting Assn. ofCommunity Orgs. for Reform Now v. Edgar (C.A. 7, 1996),99 F.3d 261, 262.
 {¶ 12} On May 30, 2002, the parties entered into an agreed partial judgment entry regarding allocation of parental rights, responsibilities and parenting time. The agreement was signed by Pamela and her attorney, David and his attorney, and the guardian ad litem. The court made findings in the judgment entry, based upon the agreement of the parties and for good cause shown, that Pamela would be the residential parent and legal custodian of Katie and that David would have parenting time with Katie one weekday each week and on alternating Saturdays and Sundays.
 {¶ 13} In addition, prior to approval of the agreement, the trial court considered the evidence relating to the issue of parenting time, including the recommendations of the guardian ad litem and the court-appointed psychologist. The court noted that Pamela was in good emotional and physical health and was attending therapy with the court-appointed psychologist. On the other hand, the trial court noted that the court-appointed psychologist's report indicated that David's "emotional status did indicate some instability." June 11, 2003 Decision and Findings of Fact, p. 6. The clinical diagnosis indicated that David "does not display symptoms that indicate long term issues of anxiety or depression. However there may be transient symptoms of depression and anxiety, which would be observed intermittently and are likely to be short-lived. There may also be observed as widely varying mood swings, which are again likely to be of short duration." Id. The trial court also noted that Katie and David had a strained relationship and accepted the recommendation of the guardian ad litem, which was also accepted and agreed to by the parties as well in the agreed partial judgment entry.
 {¶ 14} Likewise, the parties addressed the matter of distribution of marital assets in a series of agreed entries, including stipulated partial distributions of marital property on November 6, 2001 and April 23, 2002, an agreed entry regarding a December 17, 2001 property settlement on May 8, 2002, a partial judgment entry and agreed property division order on May 30, 2002 and agreed judgment entries on June 11, 2003. Since the parties could not reach a decision on an equitable division of all of their assets, they agreed to liquidate most of their assets and pay the taxes and debt. The parties estimated the liquidation results and tax consequences, although the results amounted to speculation at the time. In its decision and findings of fact, the trial court stated that it considered all of the relevant factors set forth in R.C. 3105.171 (F)(1-9) necessary to approve the division of marital property. The trial court found that the division of property was equitable and accepted the agreement of the parties. Furthermore, the trial court found that David's "claim that the personal property has not been divided by the previous agreements is not supported by the evidence. No further division of property is warranted." June 11, 2003 Decision and Findings of Fact, p. 15. The trial court does not retain jurisdiction over items of property not submitted to the court during trial.
 {¶ 15} While David contends that he did not understand that the agreements would be used by the court in its decision and findings of fact, the record reveals that the trial court spent a considerable amount of time making sure that David understood the effect of the agreements.
At the time that the agreements were entered into the record,the court specifically inquired as to whether each of the partieshad adequate opportunity to discuss the agreements with counseland their certified public accounts, whether each understood theagreements, whether either had any questions concerning theagreements or their effects, if the agreements were voluntary, ifanyone had made any threats, promises, or other inducements toenter into the agreements, if either was under the influence ofany substance that may affect her and his ability to makejudgments, if each was satisfied with their agreements, if eachunderstood that this was a final resolution of all the issuesover which the parties entered into the agreements, and thattheir agreements, upon approval by the court, would be a finaland unappealable judgment.
June 11, 2003, Decision and Findings of Fact, p. 1. The trial court further inquired of each party separately as to the agreements and was satisfied with each party's answer.
 {¶ 16} Therefore, as David consented to the agreements of parenting time and distribution of marital assets at the divorce proceedings, and as the trial court took extra measures to ensure David understood the agreements, David cannot challenge the agreements on appeal, as he has waived his right to do so. Accordingly, the first and third assignments of error are without merit and are overruled.
 {¶ 17} In his second assignment of error, David argues that the trial court failed to take into consideration the change in David's financial circumstances when awarding lump sum spousal support to Pamela. David also contends that the trial court failed to consider the factors outlined in R.C. 3105.18 and, therefore, its decision regarding spousal support was unreasonable, arbitrary and unconscionable.
 {¶ 18} The trial court found that Pamela was entitled to an award of spousal support in the sum of $45,165 per year for a period of two years and $37,927 per year for a period of eight years and eleven months, for a total of $428,503. The court ordered that spousal support be paid to Pamela from the property division in a lump sum of $245,000, representing the present value of the support ordered, less the estimated taxes payable by Pamela upon receipt of the support.
 {¶ 19} When determining the appropriateness and reasonableness of spousal support, the court must consider the factors listed in R.C. 3105.18(C)(1). Among the factors that the court must consider are the income of the parties, earning abilities, ages, physical, mental and emotional conditions, retirement benefits, duration of the marriage, standard of living and assets and liabilities. The trial court gave considerable weight to several factors in R.C. 3105.18(C)(1), including:
(j) The contribution of each party to the education, training,or earning ability of the other party, including, but not limitedto, any party's contribution to the acquisition of a professionaldegree of the other party;
 (k) The time and expense necessary for the spouse who isseeking spousal support to acquire education, training, or jobexperience so that the spouse will be qualified to obtainappropriate employment, provided the education, training, or jobexperience, and employment is, in fact, sought;
* * *
(m) The lost income production capacity of either party thatresulted from that party's marital responsibilities[.]
 {¶ 20} When considering these factors in making a determination regarding spousal support, the trial court is granted broad discretion in determining the manner and method of payment. Cherry v. Cherry (1981), 66 Ohio St.2d 348,421 N.E.2d 1293. Pursuant to R.C. 3105.18(B), "[a]n award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable." A reviewing court will not substitute its own judgment for that of the trial court unless, when considering the totality of the circumstances, it is determined that the trial court abused its discretion. Briganti v. Briganti (1984),9 Ohio St.3d 220, 459 N.E.2d 896. A finding of abuse of discretion by the trial court with regard to the order of spousal support would imply that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 21} In its decision and findings of fact, the trial court found that Pamela significantly contributed to David's earning capacity by supporting him while he attended medical school and pursued a lengthy residency. While David attended medical school and was not employed, Pamela's earnings from teaching and David's college loans provided the parties' only income. David's college loans were later repaid with marital income. The trial court also found that David's earning ability increased dramatically following his marriage to Pamela as a result of her contribution to the acquisition of his professional degree and medical practice. On the other hand, the trial court found that Pamela's earning ability was adversely affected by her duties throughout the marriage.
 {¶ 22} While both parties worked outside the home during the marriage, both parties agreed that when Katie was born Pamela would stop teaching and stay home with Katie. Thereafter, Pamela worked part-time managing David's office and managing their investment holdings. Due to the parties' agreement to liquidate their investments, Pamela was unable to continue managing the parties' investments and derive income as she had in the past. The trial court found that Pamela's income at the time of trial consisted of temporary spousal support and the receipt of other investment income.
 {¶ 23} Because of the duties Pamela incurred during the marriage of managing David's office and their investment holdings, Pamela did not maintain her teaching certification. Pamela testified at trial that additional education was necessary in order for her to regain her teaching certificate. Pamela revealed that she did not intend to return to teaching but rather sought to purchase and manage real estate and become fully self-supporting. The trial court found that had Pamela maintained her teaching certification she may have the earning ability of $43,000 per year. However, the court found that imputing income to her as if she was certified as a teacher when she was not would not be equitable. The trial court, therefore, determined Pamela's earning ability to be $15,927, her current earning ability as a manager of real estate, for a period of two years to permit her to complete her teaching certification or determine how to support herself. For the purpose of determining support obligations, the court determined Pamela's earning ability to be $42,533 as of March 1, 2005, and thereafter.
 {¶ 24} The trial court noted that David's earning ability could not be equitably established due to David's voluntary termination of his employment and failure to present evidence as to his earning ability. David resigned from his employment with MIPA on March 19, 2002. The trial court found that there was no evidence indicating that David surrendered his Ohio license to practice medicine despite his attorney's and psychiatrist's recommendations that he do so. In fact, the record shows that David continued to meet the guidelines for continuing medical education courses and even served on the advisory board for a prescription drug company. While David maintained disability insurance and sought disability benefits at the time he voluntarily stopped practicing medicine, there is no evidence in the record of David's receipt of disability benefits or the amount due if his disability is determined.
 {¶ 25} One of the factors presented in the record that apparently contributed to David's decision to voluntarily cease practicing medicine was a recommendation by David's psychiatrist, Dr. DeMuth. Dr. DeMuth made findings and testified at trial regarding his findings that David was too unstable to practice medicine at the present time and his recommendation that David relinquish his medical license. Dr. DeMuth also testified at trial that he believed David would improve sufficiently within four to six months to be able to practice medicine again. At Dr. DeMuth's request, David saw Dr. Goldsmith for a second opinion. Dr. Goldsmith testified that he found David to be suffering from major depression as a result of his divorce. Dr. Goldsmith further testified that he believed David would be able to return to practicing medicine once his domestic problem was resolved.
 {¶ 26} The trial court found that there was credible evidence showing that David's claim of disability was related solely to his reaction to the divorce proceeding, and temporary in nature as of the time of trial. The trial court further found that David's earning potential would be lucrative, due to his maintaining his medical license, certification and practice though being fired from his first job and voluntarily terminating his current employment at MIPA and applying for disability benefits. Also taken into consideration by the trial court was David's failure to inform his employer, MIPA, of his psychiatric problem and the notification that David sent his patients informing them that he would not be practicing "for a short period for personal reasons." The timing of David's emotional crisis in relation to the property division event and divorce trial dates were found by the trial court to be selfishly calculated, particularly given the other evidence presented during the divorce proceedings relating to David's credibility. Therefore, the trial court determined that David's earning ability, for purposes of spousal and child support computation, was the same as his previous year's employment for medical practice and the trial court accordingly imputed $356,000 in earning potential to David.
 {¶ 27} While the trial court found that there was evidence that Pamela withdrew monies from marital accounts after the parties separated, the trial court found that Pamela paid a total of $76,598.06 for expenses that David should have paid. Pamela withdrew more than $40,000 in 2000 and withdrew $27,244 in 2002, when David was not working and not paying child support. Pamela repaid monies for the mortgage and taxes of $15,000. The trial court found that both David and Pamela improperly dissipated marital assets and while the amounts of the two parties was not exactly equal, the trial court found that it was equitable not to make an award to either party in that regard.
 {¶ 28} The trial court carefully explained the factors it considered in its lengthy decision and findings of fact. It was well within the trial court's discretion to make judgments regarding the credibility of the witnesses and the weight to be given to their testimony. After reviewing the record, we find that the trial court did not abuse its discretion in finding that the evidence did not support David's claim of disability and in finding that David had an earning capacity of $356,000. The child support and spousal support awards granted by the trial court were proper under the circumstances of this case.
 {¶ 29} The trial court has the discretion to determine whether spousal support is payable in gross or in installments, in addition to its determination of the nature, amount, terms of payment and duration of spousal support. Ohio courts have upheld awards of spousal support in lump sums. Brown v. Brown, 4th Dist. No. 02CA689, 2003-Ohio-304, 2003 WL 164602; Golick v.Golick, 12th Dist. Nos. 99-05-040, and 99-05-045, 2001-Ohio-8641, 2001 WL 1598290; Fletcher v. Fletcher (June 28, 1995), 2d Dist. No. 14726, unreported, 1995 WL 386818; Murphy v.Murphy (Feb. 22, 1994), 5th Dist. No. CA9413, unreported, 1994 WL 75563. The trial court is required to consider all of the factors listed in R.C. 3105.18(C)(1) before making its determination. Id.
 {¶ 30} In addition to its consideration of the factors in R.C. 3105.18(C)(1), the trial court also carefully considered the following factors in deciding to award spousal support in lump sum rather than periodic amounts:
(1) David Miller's sudden onset of emotional instability onthe first day of trial; (2) David Miller's history of beingpoorly organized but able to maintain and pay, despiteterminating his employment, all of his own personal expenses,including purchasing a home, paying child support to MelissaHeslep voluntarily and not by income withholding; (3) DavidMiller's seeking interviewing and seeking employment in severalother states; (4) David Miller's complete violation of temporaryorders to pay spousal support and child support while payingchild support to Nancy Heslep while maintaining a sexualrelationship with her; (5) David Miller's attempt to hide assetsfrom Pamela Miller by inducing a witness to lie; (6) DavidMiller's conferring with an accountant concerning "off shore"investments; (7) the consistency of witnesses' testimony thatDavid Miller consistently stated he would not pay support toPamela Miller coupled with his voluntary termination ofemployment without surrendering his license; and (8) David Millertestified that his practice will be diminished as other Marionphysicians may no longer refer patients to him as a result ofthis divorce proceeding.
June 11, 2003 Decision and Findings of Fact, p. 15.
 {¶ 31} The trial court found that the totality of the circumstances set forth above did not justify an award of periodic spousal support because this case involved exceptional circumstances. The record made available to this court amply supports the determinations made by the trial court. The trial court's determinations from portions of the record that were not made available by David for review by this court are accepted as correct as we presume that the omitted evidence supports the findings and conclusions of the trial court.
The duty to provide a transcript for appellate review fallsupon the appellant. This is necessarily so because an appellantbears the burden of showing error by reference to matters in therecord. This principle is recognized in App.R. 9(B), whichprovides, in part, that `* * * the appellant shall in writingorder from the reporter a complete transcript or a transcript ofsuch parts of the proceedings not already on file as he deemsnecessary for inclusion in the record * * *.' When portions ofthe transcript necessary for resolution of assigned errors areomitted from the record, the reviewing court has nothing to passupon and thus, as to those assigned errors, the court has nochoice but to presume the validity of the lower court'sproceedings, and to affirm.
 Napper v. Napper, 3d Dist. No. 1-02-82, 2003-Ohio-2719, 2003 WL 21224230, at ¶ 6, citing Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384. In addition, exhibits presented by David as part of his appeal which were not included in the record at the trial court cannot be considered by this court. Appellate courts are confined, pursuant to App.R. 12(A), to the record before it as defined in App.R. 9(A). Lamarv. Marbury (1982), 69 Ohio St.2d 274, 431 N.E.2d 1028.
 {¶ 32} After considering the evidence properly presented to this court, we conclude that the trial court did not act unreasonably, arbitrarily or unconscionably as it carefully considered the factors in R.C. 3105.18(C)(1) and the circumstances in this case. Accordingly, the second assignment of error is overruled.
 {¶ 33} In his fourth assignment of error, David argues that the trial court erred in awarding the payment of attorney's fees to Pamela in the amount of $125,000 because her actions were the cause of the delays in the divorce proceedings. David contends that Pamela's refusal to accept his proposals for distribution of marital assets and liabilities, the false accusations Pamela made with regard to David and her financial misappropriation of marital funds should have precluded Pamela from being awarded attorney's fees.
 {¶ 34} R.C. 3105.18(H) governs awarding attorney's fees as part of spousal support awards. This section provides that, "[i]n divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards." R.C.3105.18(H). Further, when considering whether to award attorney's fees, the trial court "shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." Id.
 {¶ 35} The reasonableness of attorney's fees cannot be determined until they are incurred. Since R.C. 3105.18(H) is prospective in nature "it requires that the trial court determine that a party will be prevented from fully litigating her rights if an award of fees is not made." Seagraves v. Seagraves
(1997), 125 Ohio App.3d 98, 102, 707 N.E.2d 1165. "[T]he reasonableness of any award of attorney's fees pursuant to R.C.3105.18(H) depends on the ability of one party to pay and the other party's need for assistance." Jackson v. Jackson, 2d Dist. No. 2003CA36, 2003-Ohio-7095, 2003 WL 23011368, at ¶ 43. In addition, when a court finds a party in contempt of court for failure to make spousal or child support payments, the court "shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the action of contempt." R.C. 3105.18(G). We review a trial court's decision to award attorney's fees under the same standard in which we review a trial court's decision to award other forms of spousal support, which is the abuse of discretion set forth above.
 {¶ 36} The trial court compiled the attorney's fees incurred by the parties and determined that the parties "shall equalize the payment of fees through payment from marital property in the amount of Twenty-Five Thousand Dollars ($25,000) by defendant to plaintiff." June 11, 2003 Final Judgment Entry — Decree of Divorce, p. 7. After equalizing the payment of the fees, the trial court further ordered David to pay Pamela $100,000 as additional spousal support for her incurred attorney's fees. Id. With regard to its decision to award attorney's fees, the trial court found that much of the complexity of the case was owing to David's bad faith.
 {¶ 37} After reviewing the record before us, we find no abuse of discretion in the trial court's award of attorney's fees to Pamela. The trial court found that the cause was continued from the trial date set in January, 2002 after David claimed to be disabled due to severe depression. The trial court further found that David fully complied with the court order to pay child support to Nancy Heslep but David had not complied with the court's order to pay child support to Pamela since voluntarily quitting his job. The evidence at trial established that David voluntarily paid for his new home mortgage and all his expenses, including his credit card charges and his leased BMW, and was not in arrears in any other financial obligation except as noted in the instant case. The trial court also found that David failed repeatedly during the divorce proceedings to provide documents requested for depositions which required further discovery. Furthermore, the trial court made findings that David counseled witnesses to lie on his behalf and attempted to conceal marital assets during the divorce proceedings.
 {¶ 38} The trial court ultimately found that David acted unreasonably in the resolution of this case. Among the factors considered by the trial court in this determination were: David's act of depositing $15,000 in a bank account and withdrawing $10,000 but being unable to recall what happened to the money; David being unable to recall how Pamela and Katie were terminated from his medical insurance; David admitting to not taking advice from his attorney and his accountant; David's inability to recall what he earned in the year 2002; David admitting that after December of 2001, he traveled, spent and charged significant amounts of money, while he did not pay child or spousal support; and David's belief that Pamela should deduct what he owed from rental income in lieu of his complying with court orders to pay child and spousal support.
 {¶ 39} Since the parties in this case stipulated that their attorney's fees were reasonable and appropriate, the trial court was only required to determine if Pamela was entitled to an award of attorney's fees to protect her interest in the case and enforce payment of support due from David. The trial court acted within its discretion in awarding attorney's fees to Pamela as a result of David's actions that caused the divorce proceedings to be prolonged and caused Pamela to incur additional attorney's fees. The fourth assignment of error is, therefore, overruled.
 {¶ 40} Having found no merit with the assignments of error presented for review, we affirm the judgment of the Common Pleas Court of Marion County.
Judgment affirmed.
Shaw, P.J., and Cupp, J., concur.