OPINION
{¶ 1} Defendant-appellant Laura McConnell ("Laura") brings this appeal from the judgment of the Court of Common Pleas of Union County granting a divorce to plaintiff-appellee Thomas J. McConnell ("Thomas")
 {¶ 2} Laura and Thomas were married on May 28, 1977. On April 9, 2003, Thomas filed for divorce claiming incompatibility. Laura denied the claim of incompatibility, so on April 16, 2003, Thomas filed an amended complaint in which he admitted to having committed adultery. Laura filed an answer on May 5, 2003, in which she formally denied the claim of incompatibility and the claim of Thomas's adultery for lack of specific knowledge. On July 7, 2003, Thomas filed another amended complaint which alleged that Laura was guilty of gross neglect of duty and extreme cruelty. On July 14, 2003, Laura filed her amended answer denying all grounds for divorce. On August 15, 2003, Laura filed a motion to dismiss or, in the alternative, a motion to birfucate the matter of grounds. The motions were denied on August 18, 2003.
 {¶ 3} On September 15, 2003, a trial was held. Laura moved to dismiss the case at the end of Thomas' case and her motion was denied. Laura again moved for dismissal of the case at the close of her case. Again, the trial court denied the motion to dismiss. On September 18, 2003, the trial court issued a decision and entry. On September 19, 2003, the trial court issued a nunc pro tunc decision and entry which granted the divorce. It is from this judgment that Laura appeals and raises the following assignments of error.
The trial court erred in granting a divorce to [Thomas] on thegrounds of adultery, extreme cruelty, and gross neglect of duty.
 The trial court erred in determining the amount and length ofthe spousal support award to [Laura].
 {¶ 4} In the first assignment of error, Laura argues that the trial court erred by finding that she had committed extreme cruelty and gross neglect of duty. "The definition of extreme cruelty is sufficiently broad to encompass acts and conduct which destroy the peace of mind and happiness of one of the parties to the marriage and make the marital relationship intolerable to that party." Wuebker v. Wuebker, 3rd Dist. No. 2-03-04, 2003-Ohio-2954 at ¶ 9.
 {¶ 5} The trial court made findings that Laura had engaged in the following actions.
Further, the Court finds that the evidence shows the marriagewas over for the last five to six years; that [Laura] left for avacation as had been their practice, without him, taking insteadthe daughter of the parties; that [Laura] failed to pick [Thomas]up from his office after hours although being fully aware that hehad no mode of transportation; that [Laura] advised [Thomas] thatshe would not prepare his dinner for him; that [Laura] informed[Thomas] that he was to sign papers with her attorney, BarryWolinetz, or she would file against him for divorce; thatalthough the parties had pledged not to tell anyone about theconfessed adultery, [Laura] discussed the matter with thechildren of the parties, [Laura's] mother and sister, and toldseven others present as observers in the courtroom of the affair,including Karen Long, Marsha Kiss, and Sherry Green, anddiscussed the matter with Debbie Stubbs. [Thomas] testified thathe lost patients because they became aware of the affair. [Laura]admitted on cross-examination that she declined [Thomas'] offerto reconcile.
 [Thomas] further provided evidence that [Laura] had been drunkand abusive toward him in public, and had threatened suicideseveral times, after which on at least one occasion she had runinto her bedroom and locked herself in, failing to respond to[Thomas'] inquiries as to whether she was all right. This wasdone by [Laura] in proximity to and shortly after the party'sson's suicide, thereby being extremely effective in mentally andemotionally disturbing [Thomas].
 When [Thomas] tried to spend more time with [Laura] by takingher on a trip to the Air Force Museum in Dayton, Ohio, [Laura]began "yelling and screaming" at [Thomas] before even getting outof Union County, to the extent that [Thomas] turned the autoaround at Irwin (in the southern part of Union County) andreturned home without completing the day at the museum in[Laura's] company.
September 19, 2003, judgment entry, 2-4. All of these findings are supported by some evidence. Based upon this evidence, the trial court ruled that Laura engaged in a continuing course of conduct which destroyed "the peace of mind and happiness of [Thomas] and thereby rendered the marriage intolerable to [Thomas]. Id. at 4. The trial court, in its discretion, could have determined that a finding of extreme cruelty as grounds for divorce was justified. Since there is some evidence to support the trial court's judgment, this court does not find that the trial court abused its discretion. The first assignment of error is overruled.
 {¶ 6} The second assignment of error raises the issue of spousal support. "As part of a divorce proceeding, a trial court has equitable authority to divide and distribute the marital estate, and then consider whether an award of sustenance alimony would be appropriate." Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67, 554 N.E.2d 83. "The trial court is granted broad discretion in deciding what is equitable depending on the facts and circumstances of the case and a reviewing court cannot substitute its judgment for that of the trial court unless, under the totality of the circumstances, the trial court abused its discretion." Seciliot v. Seciliot, 3rd Dist. No. 14-2000-27, 2001-Ohio-2151 at ¶ 19. In awarding spousal support, the trial court must consider certain statutory factors. R.C.3105.18(C)(1).
 {¶ 7} In this case, the record is clear that the trial court considered the statutory factors. The trial court then reached conclusions, based upon the evidence before it, as to what would be appropriate spousal support. The trial court even explained its reasons for its conclusions.
The court finds the Plaintiff is age 49, employed by M.P.I,Inc. as a licensed medical doctor with income projected to be$184,000 together with a bonus of $30,000 in the year 2003, andwith projected income of $184,000 in the year 2004, he havingworked throughout the marriage.
 Defendant is age 48, currently enrolled in Ohio WesleyanUniversity as a full time student in her Freshman year ofpursuing a Bachelor of Science Degree in Botany, with tuition,after application of a grant obtained by her, approximating$21,000.00. She has previously received an Associates Degree as amedical assistant from Dyke College. She has either worked as ahomemaker throughout the marriage, or prior to the birth ofchildren and after the children were grown, she has been employedoutside the home as a semi-skilled person.
 Plaintiff is in reasonably good health physically, mentallyand emotionally, with full employment in the foreseeable future.Defendant is in reasonably good health physically (although shebroke her foot one week prior to the final hearing and istemporarily walking with a "boot"), mentally, and is functioningemotionally, although she need to continue to adjust to the deathof her son. Defendant has the capacity to work and earn moneypresently as a semi-skilled person in the earning range of$24,757.00, and upon completion of her degree in botany,obtaining employment in that field at an earning range somewherearound $44,125.00.
 Plaintiff has retirement earnings in the Social Securitysystem, no values stipulated, a 401(k) valued at $142,788.71, andan E-Trade account valued at $292,585.46. Plaintiff's medicalpractice is valued at $0.00. Defendant has a small PublicEmployees Retirement System account with a minor value at $90.10,Social Security benefits, no values stipulated, an account valuedat $55,445.04, and a 20% holding in MPI Real Estate valued at$42,800.00.
 With no minor children of the marriage, [R.C.3105.18(C)(1)(f)] would not be applicable. The parties haveenjoyed an upper to upper-middle class standard of living duringthe marriage. Other assets of the Plaintiff will be discussedinfra in division of property. Defendant worked outside the homewhile Plaintiff completed his internship and residency, providingliving expenses for the family. The Defendant did not pay forPlaintiff's education costs from her earnings.
 Defendant can complete her requirements for a degree in botanywithin 4 years, and employment in that field is easily obtained.The parties have submitted calculations of tax considerations andconsequences from spousal support to the parties in Exhibits 6and U, which the Court has also considered. The Court finds thatthere will be no lost income production capacity of either partyresulting from that party's marital responsibilities. Plaintiffis covered with health insurance at no cost through hisemployment, and Defendant will have a cost of $282.00 per monthfor her health insurance after the divorce is granted.
The Court has considered Joint Exhibit I and Plaintiff's Exhibit 17, and finds that, after examination of the valued Social Security benefits to be received by Plaintiff, $159,406.79, and by Defendant, $148,180.00, in light of [Nevillev. Neville, 99 Ohio St.3d 275, 2003-Ohio-3624], the Court has made up for and exceeded the difference in values by setting off the MPI Real Estate asset to Defendant, infra, thereby providing for an equal distribution of assets.
Upon consideration of the record and those considerationsrequired under [R.C. 3105.18], the Court finds that an award ofspousal support from Plaintiff to Defendant is appropriate, inthe sum of $1,500.00 per month beginning October 1, 2003, andcontinuing monthly until January 1, 2004, at which time themonthly payments for spousal support shall be the sum of$3,500.00 for a period of 42 months, after which the continuingmonthly support for the next six months shall be $2,000.00. Afterpayment for the above noted 51 months, no further spousal supportis ordered to be paid.
 The Court explains the reasoning behind this part of the Orderas follows: Tuition having been paid to Ohio Wesleyan Universityfor this current school term, and the testimony being thatDefendant had requested and has been receiving $1,500.00 permonth as voluntary spousal support during pendency of this case,that amount has been continued by the Court until January 1,2004, at which time the Court has taken into consideration theremaining $21,000.00 annual tuition at OWU after application ofthe Defendant's grant in aid, and recognizing additionalschooling costs, has added $2,000.00 to the monthly spousalsupport to cover those combined expenses, making the totalspousal support per month $3,500.00. After graduation, the Courthas reduced the montly spousal support payments to a total of$2,000.00 allowing Defendant spousal support while she isadjusting to her then living environment, and providing for somesmall amount of inflation. The Court further reserves specificand continuing authority to modify the amount or terms of alimonyor spousal support, based upon a change of circumstances ofeither party, including but not limited to, any increase orinvoluntary decrease in the party's wages, salary, bonuses,living expenses, or medical expenses.
Judgment Entry, 4-9.
 {¶ 8} Given the evidence before it, the trial court did not abuse its discretion with respect to the granting of spousal support in the amounts given. The record does not demonstrate that the trial court's decision was unreasonable, arbitrary or unconscionable. Thus, the second assignment of error is overruled.
 {¶ 9} The judgment of the Court of Common Pleas of Union County is affirmed.
Judgment affirmed.
SHAW, P.J., concurs.
CUPP, J., concurs in judgment only.