OPINION
{¶ 1} Plaintiff/Appellant/Cross-Appellee, Sheryl A. Herron, and Defendant/Appellee/Cross-Appellant, John T. Herron, appeal a judgment of the Allen County Court of Common Pleas, granting Sheryl's petition for a divorce and allocating their marital and separate property.
 {¶ 2} Sheryl maintains the trial court erred by finding that the increase in the value of her interest in Robinson Fin Machines, Inc. ("Robinson Fin") during the term of the marriage was marital property. Sheryl also maintains that the trial court erred in determining the value of Haushalter Group, LLC ("Haushalter Group") from the balance sheet instead of using its current market value. Finally, Sheryl challenges the trial court's finding that certain post-separation contributions she made to Haushalter Group were marital property.
 {¶ 3} On cross-appeal, John claims that the trial court erred in determining the value of Robinson Fin by using the book value for that company instead of the fair market value. Further, John claims that Sheryl contributed to 33% of Robinson Fin's growth and that the trial court erred when it found that she had only contributed to 25% of its growth. He also claims that the trial court abused its discretion by awarding him only $4,000.00 per month for thirty-seven months in spousal support and by not awarding him litigation expenses.
 {¶ 4} Having reviewed the entire record, we find that there is competent and credible evidence supporting the trial court's valuation of both Robinson Fin and Haushalter Group. We also find that the trial court did not abuse its discretion when it awarded John spousal support and refused to award him litigation expenses. Accordingly, all five assignments of error are overruled, and the judgment of the trial court is affirmed.
 {¶ 5} Sheryl and John were married on February 10, 1990. No children were born as issue of their marriage. At the time of their marriage, John worked for Ohio Northern University ("Ohio Northern") in Ada, Ohio, and Sheryl was a student at the same university. John also owned a sole proprietorship known as Cranberry Creek Communications ("CCC"), which he used to supplement his income from Ohio Northern. CCC became John's primary source of employment after he was terminated by Ohio Northern in 1996.
 {¶ 6} While attending Ohio Northern, Sheryl was employed as an assistant to the dean of the university. She graduated from Ohio Northern in May of 1992 with a bachelor's degree in business management and took a job as a financial manager with the Association of Management, which was located on Ohio Northern's campus. Sheryl worked at the Association of Management until 1994, at which time she went to work for Robinson Fin. At the time, Sheryl's mother, Ruth Haushalter, was the president and sole share holder of Robinson Fin. Sheryl was employed by Robinson Fin as the vice president of administration. Both of her brothers, Mark and David Haushalter, were also employed by Robinson Fin. Mark was hired as the vice president of engineering and manufacturing, and David was hired as the vice president of sales and marketing.
 {¶ 7} On June 16, 1995, Ruth began to gift an equal number of shares in Robinson Fin to her three children, Sheryl, Mark, and David. On that same date, Ruth and the three children entered into a buy/sell agreement. The buy/sell agreement limited the ability of stockholders to transfer the Robinson Fin stock and gave stockholders the right to purchase at book value the shares of any other stockholder who attempted to sell his/her shares. Ruth's gifting of the stock to her children was part of an extended estate planning device under which she intended to gradually gift all of her stock to the three children equally. There are a total of 1000 shares of stock in Robinson Fin. As of the day of Sheryl and John's separation, Ruth held 349 shares, and the three children each held 217 shares.
 {¶ 8} Also on June 16, 1995, Sheryl, Mark, and David formed Haushalter Group. Because of the nature of the product Robinson Fin manufactures, it is impossible for Robinson Fin to acquire products liability insurance. Thus, one of the objectives of Haushalter Group was to provide Sheryl, Mark, and David with a source of funds that would be readily available in the event a products liability suit arose based on the failure of one of the products made by Robinson Fin. Besides providing an alternative to products liability insurance, Haushalter Group served as a personal bank and financial institution to Sheryl, Mark, and David. As part of this function, Haushalter Group has loaned money to Robinson Fin, Ruth, and several other private businesses. It has also invested money in mutual funds and stocks.
 {¶ 9} Haushalter Group was created with equal capital contributions from Sheryl, Mark, and David. Consequently, each has an equal ownership interest in the company. Periodically, Sheryl, Mark, and David will make identical deposits of additional funds into Haushalter Group out of the bonuses they receive from Robinson Fin. All monetary contributions Sheryl made to Haushalter Group during the marriage came from the bonuses she received from Robinson Fin, and she does not dispute the marital nature of such contributions.
 {¶ 10} Additionally, the operating agreement for Haushalter Group includes a provision for the distribution of funds to a withdrawing member. The provision provides that a withdrawing member is only entitled to receive the liquid asset value of his/her share that can be converted into cash without delay.
 {¶ 11} On November 24th 2002, Sheryl and John separated. As a result of this separation, Sheryl filed a petition seeking a divorce from John on the grounds of incompatibility. The matter was heard by the trial court on July 22 and 23, 2003. The trial court issued a written decision on February 4, 2004, finding that the parties were incompatible, granting Sheryl's petition for a divorce, and allocating the debts and assets of the parties. The trial court also granted John spousal support in the amount of $4,000.00 per month for thirty-seven months; however, John was not awarded his attorney's fees as part of the divorce settlement. On February 27, 2004, the trial court filed a judgment entry reiterating the decisions and findings that were set forth in its written decision. From this judgment both Sheryl and John appeal, collectively presenting five assignments of error for our review.
Appellant/Cross-Appellee's Assignment of Error I The trialcourt erred in finding that the increase in value during the termof the marriage of Plaintiff/Appellant's interest in Robinson FinMachines, Inc. was a marital asset.
 Appellant/Cross-Appellee's Assignment of Error II The trialcourt erred in determining the value of Haushalter Group, LLC.from the balance sheet rather than the current market value andin determining that Plaintiff/Appellant's post separationcontributions to Haushalter Group, LLC. were not her separateproperty.
 Appellee/Cross-Appellant's Assignment of Error I The trialcourt abused its discretion, erred as a matter of law, heldagainst the weight of the evidence, and failed to follow OhioRev. Code § 3105.171 et seq., by failing to properly value anddivide that part of "Robinson Fin Machines, Inc." that was amarital asset.
 Appellee/Cross-Appellant's Assignment of Error II The trialcourt abused its discretion, erred as a matter of law, heldagainst the weight of the evidence, and failed to follow OhioRev. Code § 3105.18 et seq., by failing to award theCross-Appellant a reasonable and appropriate amount of spousalsupport for an indefinite length of time, or for a longer fixedperiod of time.
 Appellee/Cross-Appellant's Assignment of Error III The trialcourt abused its discretion, erred as a matter of law, heldagainst the weight of the evidence, and failed to follow OhioRev. Code § 3105.18 et seq., by failing to award litigationexpenses, including attorney fees, to the Cross-Appellant, and byordering the Cross-Appellant to repay to Sheryl monies advanced.
 {¶ 12} Because of the nature of these assignments of error, we will be addressing them out of order.
 Appellant/Cross-Appellee's Assignment of Error I {¶ 13} In her first assignment of error, Sheryl claims that the trial court erred in finding that the increase in the value of her interest in Robinson Fin during the course of her and John's marriage was marital property. Sheryl asserts she did not directly contribute to the increase in the value of Robinson Fin. She argues that the increase in the value of Robinson Fin was due solely to market conditions and the effort of her brothers. Thus, she maintains that any increase in the value of her interest in Robinson Fin should have been found to be passive income and her separate property.
 {¶ 14} In divorce proceedings, the trial court is required to make a determination as to whether property is marital or separate. R.C. 3105.171(B). Normally, an appellate court will review a trial court's division of property in divorce proceedings under an abuse of discretion standard. Bechara v.Essad, 7th Dist. No. 03 MA 34, 2004-Ohio-3042, at ¶ 82, citingCherry v. Cherry (1981), 66 Ohio St.2d 348, 353. However, the characterization of property as marital or separate under R.C.3105.171 is not discretionary; rather, it is a mixed question of law and fact. Bechara at ¶ 82 (citations omitted.) The trial court's determination that property is either marital or separate is a factual finding that will not be overturned on review unless that determination is against the manifest weight of the evidence. Ardrey v. Ardrey, 3rd Dist. No. 14-03-41, 2004-Ohio-2471, at ¶ 8, citing Kerchenfaut v. Kerchenfaut, 3rd Dist. No. 1-01-14, 2001-Ohio-2259. Accordingly, the trial court's determination will be upheld if it is supported by some competent and credible evidence. Ardrey at ¶ 9, citing Kerchenfaut
supra; Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 468. In determining whether there is some competent and credible evidence "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." Ardrey at ¶ 9, quoting Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159, citing In re Jane Doe I (1991), 57 Ohio St.3d 135.
 {¶ 15} The statutory definition of marital property includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]" R.C.3105.171(A)(3)(a)(iii). Alternatively, the "[p]assive income and appreciation acquired from separate property by one spouse during the marriage" is separate property. R.C. 3105.171(A)(6)(a)(iii). Passive income is defined as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).
 {¶ 16} In the case sub judice, both parties agreed that Sheryl's stock in Robinson Fin was her separate property. At trial, John argued that Sheryl had directly contributed to the appreciation of this separate property during the marriage through her employment as the vice president of administration. Thus, John claimed that the increase in value was marital property subject to division under R.C. 3105.171(A)(3)(a)(iii). On the other hand, Sheryl argued that she had personally contributed nothing to the increase in the value of the stock. She claimed that the increase in the stock's value was due solely to the prevailing market conditions and the effort of her brothers. Consequently, she claimed that the income was passive income under R.C. 3105.171(A)(4), and her separate property.
 {¶ 17} At trial, there was extensive testimony concerning Sheryl's role within Robinson Fin. She was one of four key executives running the company during its time of unprecedented expansion. As the president of Robinson Fin, her mother served as the figure head of the company and primarily dealt with community relations. Her brother Mark, the vice president of engineering and manufacturing, was in charge of the technical aspect of developing new products, while her brother David, the vice president of sales and marketing, was in charge of selling and promoting the products. Sheryl served as the vice president of administration and was responsible for the human resources and administrative aspects of Robinson Fin.
 {¶ 18} Testimony established that prior to Sheryl's arrival, her role had been filled by Mark and David on an ad hoc basis. Thus, Sheryl's employment allowed them to focus exclusively on their respective fields without extraneous distractions. There was also testimony that the complexity of Sheryl's job had increased as the size of the company grew.
 {¶ 19} The trial court considered all of this evidence and found that Sheryl was part of the reason why Robinson Fin had experienced such tremendous growth. However, the trial court did not attribute all of the growth to Sheryl. It found that the four executives were part of a team effort, each contributing to the success of the company with his/her own unique expertise. Thus, the trial court found that Sheryl had personally contributed to 25% of the overall growth of Robinson Fin during the marriage. Consequently, Sheryl's portion of this growth was found to be marital property.
 {¶ 20} This case is very factually similar to the situation the Ohio Supreme Court addressed in Middendorf v. Middendorf
(1998), 82 Ohio St.3d 397. In Middendorf, the husband owned as separate property a one half interest in a stockyard. During the marriage, the value of his interest in the stockyard increased. The trial court found that the increase was due to the husband's labor and awarded half of the value of the increase to the wife as a marital asset. In affirming the trial court's decision, the Supreme Court stated that
Passive forces such as market conditions may influence theprofitability of a business. However, it is the employees andtheir labor input that make a company productive. In today'sbusiness environment, executives and managers figure heavily inthe success or failure of a company, and in the attendant risks( e.g., termination, demotion) and rewards ( e.g., bonuses,stock options) that go with the respective position. Theseindividuals are the persons responsible for making pivotaldecisions that result in the success or failure of the company.There is no reason that these factors should not likewise berelevant in determining a spouse's input into the success of abusiness.
 Middendorf, 82 Ohio St.3d at 402.
 {¶ 21} After reviewing the entire record, we find that there is competent and credible evidence supporting the trial court's determination that 25% of the increase in Robinson Fin during the time of the marriage was due to labor on the part of Sheryl. Accordingly, Sheryl's first assignment of error is overruled.
 Appellee/Cross-Appellant's Assignment of Error I {¶ 22} In his first assignment of error, John also challenges the trial courts judgment that 25% of the increase in the value of Robinson Fin was due to the labor of Sheryl. John maintains that the president of Robinson Fin, Ruth, did not directly contribute to the growth of the company. He asserts that only the three vice presidents, Sheryl and her two brothers, were responsible for the increase in the value of the Robinson Fin stock. Thus, John claims that the trial court should have found that Sheryl's labor contributed to 33%, not 25%, of the increase in the value of the stock. John also asserts that the trial court erred when it valued Robinson Fin because it used that company's book value rather than its fair market value.
 {¶ 23} As we had previously discussed in our examination of Appellant/Cross-Appellee's first assignment of error, there was evidence before the trial court that the growth of Robinson Fin was due to a team effort on the part of all four executives. Indeed, the official job description of Robinson Fin's president, which outlines the president's duties and responsibilities, states that the president will be accountable for the organization and performance of all the other departments. The president is also responsible for promoting the public image of Robinson Fin, customer relations, and employee goodwill. Furthermore, it was Ruth who had the foresight to bring her three children into the company. She initiated the growth of the company by hiring her children and has been Robinson Fin's president throughout its expansion. Accordingly, we find that there is competent and credible evidence to support the trial court's determination that Sheryl was only responsible for 25% of the company's growth.
 {¶ 24} John next argues that the trial court wrongfully determined the value of the increase in Sheryl's Robinson Fin stock. He contends that the trial court wrongfully relied on the book value of the company rather than the fair market value.
 {¶ 25} When determining the value of a corporation for the purpose of a property division in a divorce, the trial court must determine the corporation's fair market value. Hamilton v.Hamilton, 12th Dist. Nos. CA2001-01-005, CA2001-01-010, 2002-Ohio-2417, at ¶ 47, citing Hunker v. Hunker (Nov. 30, 1987), 12th Dist. No. CA87-02-024. Fair market value is "that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market." Hamilton
at ¶ 47, quoting Wray v. Stvartak (1997), 121 Ohio App.3d 462,471. Book value has been defined as "[t]he value at which an asset is carried on a balance sheet." Hamilton at ¶ 47, quoting Black's Law Dictionary (7th Ed. 1999) 177.
 {¶ 26} The valuation of property in a divorce case is a question of fact. Covert v. Covert, 4th Dist. No. 03CA778, 2004-Ohio-3534, at ¶ 6. Accordingly, a trial court's decision pertaining to the valuation of property will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence. Id.
 {¶ 27} Contrary to John's assertion, the trial court did not rely conclusively on the book value of the Robison Fin stock in determining its value. Rather, in establishing what the fair market value of the company was, the trial court considered the fact that the parties had in place a buy/sell agreement that allowed stockholders to buy at book value the shares of any other stockholder who attempted to sell his/her shares. The trial court considered this buy/sell agreement and the book value of the stock in determining what a willing buyer would be prepared to pay a willing seller on the open market. The trial court determined that the buy/sell agreement, and the ability of other stockholders to purchase the stock at book value, would lower the expected fair market value of the stock.
 {¶ 28} We can not say that the trial court erred in considering the buy/sell agreement and the book value of the stock in establishing the fair market value of the Robinson Fin stock. Any willing buyer would certainly take into account the buy/sell agreement before making any offer on the stock. In fact, it would have been an abuse of discretion for the trial court to determine Robinson Fin's fair market value without considering the buy/sell agreement and the book value. See, James v. James
(1995), 101 Ohio App.3d 668, 681.
 {¶ 29} After reviewing the entire record before us, we find that there is competent and credible evidence supporting the trial court's valuation of the Robinson Fin stock. Accordingly, John's first assignment of error is overruled.
 Appellant/Cross-Appellee's Assignment of Error II {¶ 30} In her second assignment of error, Sheryl contends that the trial court wrongfully determined the value of Haushalter Group. She maintains that the value of Haushalter Group reflected on the company's balance sheet is not indicative of the amount she would have received as a withdrawing member under the operating agreement. Sheryl also claims that the trial court wrongfully included post-separation contributions she made to Haushalter Group in the company's value.
 {¶ 31} As discussed above, a trial court's judgment determining the value of a business will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence. Covert at ¶ 6.
 {¶ 32} Sheryl contends that the trial court erred when it used the amount on the balance sheet to value Haushalter Group. The balance sheet of Haushalter Group lists as assets the initial amount that was invested by the company in certain stocks and mutual funds. Sheryl claims that, because of fluctuations in the stock market, the value of these stocks and mutual funds has decreased. Thus, the current liquid asset value of the stocks and mutual funds is lower than the value of the stocks and mutual funds that is reflected on the balance sheet. Furthermore, Sheryl maintains that the current liquid asset value of Haushalter Group should be used to determine the value of the company because of the withdrawing member provision, which entitles a withdrawing member to receive only the current liquid asset value of his/her share.
 {¶ 33} In determining the value of Haushalter Group, the trial court did consider the withdrawing member provision of the operating agreement. However, the trial court found that because the other two members of the Group were Sheryl's brothers, that the provision would not be enforced. The trial court determined that the brothers would make sure Sheryl received the entire amount of her initial investment, not just the current liquid asset value of her share. In reaching this decision, the trial court noted that the withdrawal of a member from Haushalter group was voluntary and that Sheryl would only have to rely on the goodwill of her brothers to avoid receiving only the liquid asset value of her share.
 {¶ 34} The trial court also compared the withdrawing member provision to the buy/sell agreement for Robinson Fin. The trial court found that the buy/sell agreement had been put in place to protect Robinson Fin from coming under the control of people or entities outside of the family. Thus, the trial court found that it was likely to be enforced. However, the trial court found that the withdrawing member provision was designed to protect the assets of Haushalter Group, not the actual control of the company. The trial court reasoned that Sheryl's brothers were not likely to enforce a clause designed to protect only pecuniary interests against their sister. Based on all of the foregoing evidence, we find that the trial court's valuation of Haushalter Group is supported by competent and credible evidence.
 {¶ 35} Next, Sheryl asserts that the trial court erred in valuing Haushalter group by including post-separation contributions she made to the company.
 {¶ 36} In its written decision, the trial court specifically addressed these post-separation contributions. The trial court found that these contributions were bonuses that Sheryl had earned during the marriage, but which were not actually distributed to Sheryl until after the separation. This finding is supported by testimony that established Sheryl had earned this money prior to the separation.
 {¶ 37} After reviewing the entire record before us, we find that the trial court's valuation of Haushalter Group was supported by competent and credible evidence. Accordingly, Sheryl's second assignment of error is overruled.
 Appellee/Cross-Appellant's Assignment of Error II {¶ 38} In his second assignment of error, John contends that the trial court abused its discretion when it awarded him spousal support in the amount of $4,000.00 per month for thirty-seven months.
 {¶ 39} In a divorce action, the trial court is granted broad discretion in determining what amount of spousal support, if any, is appropriate. McConnell v. McConnell, 3rd Dist. No. 14-03-37, 2004-Ohio-1955, at ¶ 6. In making determinations regarding spousal support, the trial court decides what is equitable depending on the facts and circumstances of each case and a reviewing court cannot substitute its judgment for that of the trial court unless, under the totality of the circumstances, the trial court abused its discretion. Id., quoting Seciliot v.Seciliot, 3rd Dist. No. 14-2000-27, 2001-Ohio-2151. An abuse of discretion will only be found where the decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Additionally, in awarding spousal support, the trial court must consider certain statutory factors listed in R.C. 3105.18(C)(1).
 {¶ 40} It is clear from the record that the trial court considered the statutory factors of R.C. 3105.18(C)(1). In discussing the relevant statutory factors, the trial court found that Sheryl earned around $1,092,500.00 per year and that John had an earning capacity of around $48,000.00 per year. The trial court also found that, despite Sheryl's tremendous earnings, the parties had not enjoyed an extravagant lifestyle. Furthermore, the trial court noted that neither party had contributed to the education or training of the other. The trial court then went on to consider the fact that John would be receiving $581,741.00 in marital assets and $706,123.50 in cash. The trial court took into account the fact that John would be able to receive additional income from the interest on the $706.123.50. Based on these findings, the trial court found it reasonable to award John spousal support in the amount of $4,000.00 per month for thirty-seven months.
 {¶ 41} We do not find that the trial court acted unreasonably, arbitrarily, or unconscionably in reaching this determination. The awarded spousal support gives John $48,000.00 a year in income for three full years and an additional month. This approximates the amount of money he has the capacity to earn in the workplace and gives him adequate time to prepare for a return to the working environment. Moreover, John has adequate additional funds from the property distribution to live a lifestyle comparable to that which he had enjoyed while he and Sheryl had been married.
 {¶ 42} After reviewing the entire record, we find that the trial court did not abuse its discretion in awarding John spousal support. Accordingly, John's second assignment of error is overruled.
 Appellee/Cross-Appellant's Assignment of Error III {¶ 43} In his third assignment of error, John argues that the trial court abused its discretion by not awarding his attorney's fees to him as part of the divorce settlement.
 {¶ 44} R.C. 3105.18(H) allows a trial court to award reasonable attorney's fees "if it determines that the other party has the ability to pay the attorney's fees that the court awards." Additionally, "[w]hen the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." Id. An appellate court reviews the trial court's decision to grant or deny attorney's fees under an abuse of discretion standard. Miller v. Miller, 3rd Dist. No. 9-03-38, 2004-Ohio-923, at ¶ 35.
 {¶ 45} Looking at the entire record, we find the trial court's decision not to include John's attorney's fees as part of the divorce settlement was not unreasonable, arbitrary, or unconscionable. While Sheryl certainly had the capacity to pay the fees, it has not been demonstrated that John lacked the capacity to do so. He received $581.741.00 in martial assets and $706,123.50 in cash as part of the settlement, with an additional $4,000.00 per month for thirty-seven months in spousal support. Nothing John has shown this Court proves that he was either unable to pay the fees or unable to fully litigate his rights. Therefore, we find that the trial court's judgment not to include John's attorney's fees as part of the settlement was not an abuse of discretion, and his third assignment of error is overruled.
 {¶ 46} Having found no error prejudicial to the either the appellant or cross-appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 CUPP and BRYANT, JJ., concur.