KOTCH, Appellee,

v.

KOTCH, Appellant.

[Cite as *Kotch v. Kotch,* 178 Ohio App.3d 358, 2008-Ohio-5084.]

Court of Appeals of Ohio,
Fifth District, Stark County.

Nos. 2007CA00271 and 2007CA00317.

Decided Sept. 29, 2008.

Emily Hete, for appellee.

Leslie S. Graske, for appellant.

HOFFMAN, Presiding Judge.

{¶ 1} In case No. 2007CA00271, defendant-appellant Ron Kotch appeals the August 29, 2007 judgment entered by the Stark County Court of Common Pleas, Domestic Relations Division. In case No. 2007CA00317, Ron appeals the October 22, 2007 order entered by the same court, which continued temporary orders pending resolution of the appeal in case No. 2007CA00271. Plaintiff-appellee is Debra Kotch.

## STATEMENT OF THE CASE AND FACTS

{¶ 2} Ron and Debra were married on September 1, 2000, in Clinton, Ohio. No children were born as issue of the marriage, although Ron has an adult son from a prior marriage. The trial court issued temporary orders on December 5, 2006. Ron was ordered to pay Debra $400 per month in temporary spousal support. Ron was granted exclusive use of the residence and was ordered to pay the mortgage, taxes, and insurance thereon. Ron was also ordered to maintain the parties' life-insurance and auto-insurance policies and to pay any expenses for necessary repairs to the residence. The trial court ordered each party responsible for his or her own marital debts and to pay his or her own utilities. Debra also received several pieces of furniture from the marital residence.

{¶ 3} The matter came on for trial on August 20, 2007. The following evidence was adduced at trial. Ron and Debra dated for approximately three years prior to getting married. The couple resided together prior to the marriage in a rental unit in Copley, Ohio. In early 1997, Ron purchased the residence at 8622 Kepler Avenue, N.W., Canal Fulton, Ohio. The purchase price of the Kepler Avenue property was $165,000. Ron paid the down payment of $38,444 from his separate funds. At trial, the parties stipulated that the value of the residence was $200,000. The parties refinanced the property in 2002 and 2003. During the

2003 refinance, Debra was named an obligor on the mortgage. The mortgage at the time of trial was $114,979.03.

{¶ 4} The parties own two vehicles, a 2006 Ford E150 van, which Ron drives, and a 2002 Ford Explorer, which Debra drives. There is no debt on either vehicle. The parties also own a Ranger bass boat that was purchased in 2006 for approximately $42,000. Ron testified that the boat is currently worth $20,000, or less than half what he paid in 2006. Debra stated that the boat is worth $30,000. There is no debt on the boat. The parties own a Troy–Bilt tiller worth $500 and a Kubota tractor worth $2,000. Ron owns two or three small aluminum fishing boats, which have a total value of $300. The parties also own a small trailer, worth $500.

{¶ 5} Ron has bought and sold fishing equipment most of his life. During the marriage, the parties continued this hobby/business. In 2001, Ron purchased an antique Haddon fishing lure for $10,000. The parties attempted to sell the item on e-Bay, but had no success. Ron testified that the lure is still worth $10,000, but he believed that he could sell it for only approximately $6,000. In the spring of 2007, the parties began to sell off some of the fishing-equipment inventory. Debra listed 250 items for sale on e-Bay, for which Ron paid her $2 per item. The parties realized a total of $5,944. Debra received $500 of this amount, and Ron received $5,444.

{¶ 6} Over the course of the parties' marriage, Ron's mother sent money to them. In July, 2006, Ron's mother sent a check payable to Ron in the amount of $30,000. Ron testified that he used the money to purchase his Ford E150 van. Between August 2005 and September 2005, Ron's mother sent five checks payable to Ron and totaling $42,000. Ron stated that he used these funds to purchase the Ranger bass boat. On July 24, 2006, Ron's mother wrote a check for $30,000, also payable to Ron. Ron's mother sent a number of other checks, ranging in amounts from $25 to $600.

{¶ 7} The trial court issued its judgment entry on August 29, 2007, granting the parties a divorce and dividing the property.

{¶ 8} It is from this judgment entry that Ron appeals, raising the following assignments of error:

{¶ 9} "I. The trial court erred in failing to divide marital property equitably, when it granted [Debra] an unencumbered vehicle whose purchase money mortgage encumbered [Ron's] separate property home.

{¶ 10} "II. The trial court erred in dividing the value of the Haddon fishing lure between the parties while allocating the entire purchase debt to [Ron].

{¶ 11} "III. The trial court erred in dividing [Ron's] separate property interest in his bass boat, where [Ron] had traced the purchase funds to his previous separate property boats and to money given to him alone by his mother.

{¶ 12} "IV. The trial court erred in dividing [Ron's] vehicle value between the parties, where the evidence established that the vehicle was purchased with [Ron's] separate property gifts of money from his mother.

{¶ 13} "V. The trial court erred in allocating value in the marital residence to [Debra] where the evidence established that there was no increase in equity during the marriage and, in fact, the refinancing debt was allocated solely to [Ron].

{¶ 14} "VI. The trial court erred in imposing post-decree spousal support, where the parties had agreed there would be no support, where there was no evidence presented to the court as to the necessity and appropriateness of spousal support, and the trial court granted further spousal support without granting [Ron] an opportunity to be heard."

## I, II

{¶ 15} In his first assignment of error, Ron maintains that the trial court erred in failing to equitably divide the marital property when it granted Debra an unencumbered vehicle that was purchased after refinancing, and thereby encumbering, the Kepler Avenue home, which Ron submits is his separate property. In his second assignment of error, Ron contends that the trial court erred in dividing the value of the antique fishing lure between the parties, but allocating the debt to Ron.

{¶ 16} Ron's arguments are predicated upon his assertion that the Kepler Avenue home was his separate property because he owned the residence for a "considerable time prior to the parties' marriage." Ron submits that by refinancing the mortgage, the residence became encumbered by marital debt, and his equity in the property decreased. In other words, using the equity in his separate property, the parties refinanced the residence and used the monies obtained thereby to purchase Debra's vehicle and the fishing lure.

{¶ 17} We first review the trial court's characterization of the Kepler Avenue residence.

{¶ 18} Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital

property, has the burden of proof by a preponderance of the evidence. *Zeefe v. Zeefe* (1998), 125 Ohio App.3d 600, 614, 709 N.E.2d 208.

{¶ 19} The characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. See *McCoy v. McCoy* (1995), 105 Ohio App.3d 651, 654, 664 N.E.2d 1012; *Kelly v. Kelly* (1996), 111 Ohio App.3d 641, 676 N.E.2d 1210. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. R.C. 3105.171(D).

{¶ 20} R.C. 3105.171(A)(6)(a)(ii) defines "separate property" as follows:

{¶ 21} " 'Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: * * * (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."

{¶ 22} The trial court found that Ron purchased the Kepler Avenue property in 1997. The parties had been residing together in a rental home in Copley, Ohio prior to that time. Ron paid $165,000 for the property, using $38,444 of his separate funds as down payment. At the time of trial, the parties stipulated that the value of the residence was $200,000. The trial court found an appreciation in the value of the home of 21 percent since the date of purchase. Using the appreciation rate of 21 percent, the trial court calculated that Ron's down payment had grown from $38,444 to $46,517. The trial court found the $46,517 amount to be Ron's separate property.

{¶ 23} The testimony at trial revealed that Ron never lived in the Kepler Avenue residence by himself, but the parties moved into the residence after Ron purchased it. Over the course of their relationship, both Ron and Debra contributed to the household finances and expenses. After the parties' marriage in 2000, marital funds were used to pay down the mortgage. Both parties contributed to the upkeep of the property and the payment of the mortgage. During one of the refinances of the home, Debra was added as a mortgagor on the deed. By being so named, Debra assumed the consequences and liabilities associated with being a mortgagor.

{¶ 24} Based upon the foregoing and the entire record in this matter, we find that the trial court's characterization of the value of the Kepler Avenue residence, less the appreciated amount of Ron's down payment, as marital property is supported by sufficient, credible evidence. We further find that the trial court did not abuse its discretion in awarding Debra the Ford Explorer without offsetting the value of the vehicle from the remaining mortgage amount.

{¶ 25} We now turn to Ron's argument relative to the antique fishing lure. Ron testified that he obtained a loan for the lure using his 2000 van.[1] At the time of trial, there was no debt due and owing on the lure. The trial court awarded the lure to Ron, placing a value of $10,000 on it. Ron did not present any evidence to establish that monies received from the refinancing of the home were used to purchase the fishing lure. Therefore, Ron cannot claim that the trial court allocated debt to him. Ron received the full value of the lure. We find no abuse of discretion by the trial court.

{¶ 26} Ron's first and second assignments of error are overruled.

## III, IV

{¶ 27} In his third assignment of error, Ron contends that the trial court erred in dividing the value of the Ranger bass boat, because it was separate property. Ron submits that he traced the funds to purchase the boat to the trade-in of a premarital boat and money given to him as a gift from his mother. In his fourth assignment of error, Ron challenges the trial court's division of the value of his vehicle, arguing that the evidence established that it was purchased with money given to him as a gift from his mother.

{¶ 28} As set forth in assignments of error I and II, this court reviews the overall appropriateness of a trial court's division of property under an abuse-of-discretion standard and the characterization of the property as marital or separate under a manifest-weight-of-the-evidence standard of review.

{¶ 29} Assignments of error III and IV center around the trial court's determination that the checks payable to Ron from his mother were not gifts to only him.

{¶ 30} A trial court assumes that any property acquired during marriage is marital, unless evidence is offered to rebut that presumption. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 694 N.E.2d 989. However, marital property does not include any separate property, which is, among other things, "[a]ny gift of * * * personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). As stated supra, the party to a divorce action seeking to establish an asset or portion of an asset is separate property, rather than marital property, has the burden of proof ordinarily by a preponderance of evidence. *Zeefe*, 125 Ohio App.3d 600, 709 N.E.2d 208. However, when a party claims the separate property to be a gift, then the burden of proof is clear and convincing. *Eikleberry v. Eikleberry* (Jan. 7, 2002), 7th Dist. No. 00 BA 13,

---

1. Ron gave or sold this vehicle to his son sometime during the course of the proceedings.

2002 WL 46987; R.C. 3105.171(A)(6)(a)(vii). "The gift exception in division (A)(6)(a)(vii) requires proof that not only did the donor intend to benefit one of the spouses, but that the donor also intended to exclude the other spouse from acquiring any interest in the property through the gift that was made." *Marshall v. Marshall* (May 4, 2001), 2nd Dist. No. 2000 CA 95, at 2, 2001 WL 468407.

{¶ 31} Clear and convincing evidence means that degree of proof that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale* (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222. It is the measure or degree of proof that is more than a mere preponderance of the evidence, but less than the extent of certainty that is required for proof beyond a reasonable doubt. *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 32} The record reveals that Ron's mother wrote numerous checks payable to Ron during the course of the parties' marriage. These checks were deposited into the parties' joint account. Only one of the checks includes a notation, "Happy Birthday," revealing it to be a gift to Ron alone. Ron failed to present any evidence that his mother intended the checks to benefit him alone. Although Ron testified his mother did not care for Debra, Ron acknowledged during his deposition that he did not know whether his mother was including Debra, but he included her.

{¶ 33} We find that the trial court's decision was not against the manifest weight of the evidence, and the trial court did not abuse its discretion in its division of the marital assets.

{¶ 34} Ron's third and fourth assignments of error are overruled.

V

{¶ 35} In his fifth assignment of error, Ron asserts that the trial court erred in allocating value in the marital residence to Debra, as the evidence established that there was no increase in equity during the marriage, but only refinancing debt that the trial court allocated to Ron.

{¶ 36} As previously discussed in assignments of error I and II, the trial court properly determined that the residence, less the appreciation on Ron's down payment, was marital property. During the course of the marriage, the parties paid on the mortgage and then subsequently used the equity derived therefrom for marital purposes.

{¶ 37} We find that the trial court did not abuse its discretion in making such a determination.

{¶ 38} Ron's fifth assignment of error is overruled.

## VI

{¶ 39} In his final assignment of error, Ron submits that the trial court erred in imposing postdecree spousal support, because the parties had previously agreed there would be no spousal-support order. We agree.

{¶ 40} Civ.R. 75(H) provides: "A *motion to modify*, pending appeal, * * *, a spousal or other support order, shall be made to the trial court in the first instance, whether made before or after a notice of appeal is filed. The trial court may grant relief upon terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party and in the best interests of the children involved. * * *. An order entered upon motion under this rule may be vacated or modified by the appellate court. The appellate court has authority to enter like orders pending appeal, but an application to the appellate court for relief shall disclose what has occurred in the trial court regarding the relief." (Emphasis added).

{¶ 41} The trial court did not award spousal support to Debra in the final divorce decree. Nor did the trial court retain jurisdiction over the issue of spousal support. Civ.R. 75(H) permits a trial court to modify a spousal-support order. There is nothing in the rule that allows the trial court to enter an order for spousal support if such an order was not so provided for in the divorce decree. We find that the trial court erred in granting Debra's postdecree motion for spousal support pending appeal.

{¶ 42} Ron's sixth assignment of error is sustained.

{¶ 43} The judgment of the Stark County Court of Common Pleas, Domestic Relations Division, in case No. 2007CA00271 is affirmed. The judgment of the Stark County Court of Common Pleas, Domestic Relations Division, in case No. 2007CA00317 is reversed.

Judgment accordingly.

Wise and Edwards, JJ., concur.