[Cite as *Lotz v. Lotz*, 2014-Ohio-5625.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
AUGLAIZE COUNTY

RICKIE LOTZ,

    PLAINTIFF-APPELLANT,

                                   CASE NO.  2-14-06

    v.

ALICE LOTZ,

    DEFENDANT-APPELLEE,
    -and-

                                   O P I N I O N

DONNA J. LOTZ,

    INTERVENOR-APPELLEE.

Appeal from Auglaize County Common Pleas Court
Domestic Relations Division
Trial Court No. 2012-DR-074

Judgment Affirmed

Date of Decision:   December 22, 2014

APPEARANCES:

    *James C. King* for Appellant

    *Matthew J. Kentner*  for Appellee, Alice Lotz

**PRESTON, J.**

{¶1} Plaintiff-appellant, Rickie Lotz ("Rickie"), appeals the April 22, 2014 "judgment entry – orders on divorce" of the Auglaize County Court of Common Pleas, Domestic Relations Division, in which the trial court concluded, among other things, that real property located at 20086 Wapakoneta-Cridersville Road in Wapakoneta, Ohio (the "Property") was "marital property in its entirety." On appeal, Rickie argues that the Property was an advance on his inheritance and separate property. He also argues that even assuming the Property was marital, the trial court should have valued the Property at ten dollars based on a right of first refusal held by Rickie's mother, intervenor-appellee, Donna J. Lotz ("Donna"). For the reasons that follow, we affirm.

{¶2} On May 22, 2012, Rickie filed a complaint for divorce against defendant-appellee, Alice Lotz ("Alice"). (Doc. No. 1). On June 18, 2012, Alice filed an answer and counterclaim for divorce. (Doc. No. 15).

{¶3} On November 28, 2012, Donna filed a "motion to intervene as party defendant." (Doc. No. 49). In her motion, Donna argued that a right of first refusal gave her a contractual interest in the Property. (*Id.*).

{¶4} On December 19, 2012, the trial court granted Donna's motion to intervene. (Doc. No. 50).

**{¶5}** On December 4, 2013, the trial court held a hearing at which the parties notified the trial court of their agreement concerning some of the issues in the case. (Dec. 4, 2013 Tr. at 4). The trial court accepted the parties' partial agreement. (Doc. No. 97).

**{¶6}** On February 25, 2014, the trial court held a final hearing on the merits. (Feb. 25, 2014 Tr. at 4).

**{¶7}** On April 22, 2014, the trial court filed its "judgment entry – orders on divorce" that is the subject of this appeal. (Doc. No. 124). Among other things, the trial court concluded that the Property was "marital property in its entirety," subject to a lien on the Property in the amount $149,575.56, and that the Property's value was $440,000. (*Id.*). Concerning Donna's purported right of first refusal, the trial court stated "that the domestic relations division has no power to settle a contract dispute between the parties." (*Id.*).

**{¶8}** Rickie filed his notice of appeal on May 21, 2014. (Doc. No. 129). He raises two assignments of error for our review, which we elect to address together.

### Assignment of Error No. I

**The trial court erred in finding that the marital residence is marital property in its entirety.**

-3-

## Assignment of Error No. II

**The trial court erred in finding that the court had no power to determine the validity of the right of first refusal agreement previously executed between the parties.**

{¶9} In his first assignment of error, Rickie argues that the Property is separate property, not marital property, because Donna gifted the Property to Rickie as an advance on his inheritance.  He argues, "It is clear from the evidence presented that it was Donna['s] intent for this transfer to be an advance on [Rickie]'s inheritance as she was making similar gifts to her other children and that she intends to equalize the life-time gifts with the amount of inheritance each child receives upon her death."  (Appellant's Brief at 7).  He also argues that Alice's name was included on two deeds transferring the Property "as part of a misguided estate planning measure."  (*Id.* at 5).

{¶10} In his second assignment of error, Rickie argues that Donna held a right of first refusal on the Property, which was "[f]urther evidence" that Donna intended the transfer to be an advance on Rickie's inheritance.  (*Id.* at 7).  He also argues that if the Property is marital, then the trial court should have valued it at ten dollars based on Donna's right of first refusal.  Rickie argues that the trial court erred when it determined "that it had no power to settle a contract dispute between the parties."  (*Id.* at 8).  Based on what Rickie describes as "some discrepancy as to the timing of the execution of both deeds and the Right of First

Refusal Agreement," he argues in the alternative "that, at a minimum, the Right of First Refusal Agreement applies to 70.2% of the entire interest" in the Property. (*Id.* at 7-8).

**{¶11}** In a divorce proceeding, the division of marital and separate property involves a two-step process governed by R.C. 3105.171. *Forman v. Forman*, 3d Dist. Marion No. 9-13-67, 2014-Ohio-3545, ¶ 13; *Iacampo v. Oliver-Iacampo*, 11th Dist. Geauga No. 2011-G-3026, 2012-Ohio-1790, ¶ 16. First, the trial court must determine whether property is marital or separate property, and, second, the trial court must equitably allocate the marital and separate property. *Forman* at ¶ 13, citing *Schalk v. Schalk*, 3d Dist. Seneca No. 13-07-13, 2008-Ohio-829, ¶ 6, citing *Gibson v. Gibson*, 3d Dist. Marion No. 9-07-06, 2007-Ohio-6965, ¶ 29, citing R.C. 3105.171(B), (D); *Iacampo* at ¶ 16, citing R.C. 3105.171(B).

**{¶12}** At issue under Rickie's first assignment of error is the first step of the two-step process set forth in R.C. 3105.171—the trial court's determination of whether property is marital or separate. Under R.C. 3105.171(A)(3)(a), "marital property" includes:

> (i) All real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property * * * and that was acquired by either or both of the spouses during the marriage * * *."

R.C. 3105.171(A)(3)(a)(i), (ii). "Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate." *Hall v. Hall*, 3d Dist. Hardin No. 6-10-01, 2010-Ohio-4818, ¶ 6, citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 160 (4th Dist.1997). Under R.C. 3105.171(A)(6)(a), "separate property" includes:

[A]ll real and personal property and any interest in real or personal property that is found by the court to be any of the following:

* * *

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

R.C. 3105.171(A)(6)(a)(vii).

{¶13} "The essential elements of an *inter vivos* gift are: '(1) [the] intent of the donor to make an immediate gift, (2) delivery of the property to the donee, [and] (3) acceptance of the gift by the donee.'" *Williams v. Williams*, 3d Dist. Seneca No. 13-12-17, 2012-Ohio-6116, ¶ 16, quoting *Barkley* at 161, fn. 2, citing

*Bolles v. Toledo Trust Co.*, 132 Ohio St. 21 (1936). "'The gift exception in division (A)(6)(a)(vii) requires proof that not only did the donor intend to benefit one of the spouses, but that the donor also intended to exclude the other spouse from acquiring any interest in the property through the gift that was made.'" *Butler v. Butler*, 5th Dist. Holmes No. 12CA009, 2012-Ohio-6085, ¶ 24, quoting *Kotch v. Kotch*, 178 Ohio App.3d 358, 2008-Ohio-5084, ¶ 30 (5th Dist.), citing *Marshall v. Marshall*, 2d Dist. Greene No. 2000 CA 95, 2001 WL 468407, *2 (May 4, 2001).

{¶14} "Additionally, R.C. 3105.171(H) provides that '[e]xcept as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." *Strasburg v. Strasburg*, 3d Dist. Auglaize No. 2-10-12, 2010-Ohio-3672, ¶ 20, quoting R.C. 3105.171(H). "However, 'title can be some evidence of the parties' intent as to the nature of the asset being marital or separate.'" *Id.*, quoting *Gallo v. Gallo*, 11th Dist. Lake No. 2000-L-208, 2002-Ohio-2815, ¶ 25.

{¶15} "A party who wants an asset classified as separate property bears the burden of tracing that asset to his or her separate property." *Chawla v. Chawla*, 10th Dist. Franklin No. 13AP-399, 2014-Ohio-1188, ¶ 43, citing *Alexander v. Alexander*, 10th Dist. Franklin No. 09AP-262, 2009-Ohio-5856, ¶ 24. As set forth

in R.C. 3105.171(A)(6)(a)(vii), "[w]hen a party claims the separate property to be a gift, the burden is clear and convincing." *Butler* at ¶ 24, citing *Eikleberry v. Eikleberry*, 7th Dist. Belmont No. 00 BA 13, 2002-Ohio-438. "Clear and convincing evidence is '[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.'" *Williams* at ¶ 15, quoting *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986).

{¶16} This court reviews the trial court's classification of property as marital or separate under a manifest-weight-of-the-evidence standard. *Reed v. Reed*, 3d Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 7, citing *Gibson*, 2007-Ohio-6965, at ¶ 26. Accordingly, we will not reverse the trial court's judgment if it is supported by some competent, credible evidence. *Id.*, citing *Barkley*, 119 Ohio App.3d at 159. "'This highly deferential standard of review permits the affirmation of the trial court's judgment if there is even 'some' evidence to support the court's finding.'" *Id.*, quoting *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, ¶ 15 (3d Dist.).

{¶17} In his second assignment of error, Rickie challenges the trial court's valuation of the Property. "R.C. 3105.171(C)(1) mandates that a trial court divide marital property equally, or, if an equal division is inequitable, that the court divide the marital property equitably." *Schwarck v. Schwarck*, 3d Dist. Auglaize

No. 2-11-24, 2012-Ohio-3902, ¶ 26. "To comply with that duty, a trial court must generally assign and consider the values of marital assets in order to equitably divide those assets." *Id.*, citing *Beagle v. Beagle*, 10th Dist. Franklin No. 07AP-494, 2008-Ohio-764, ¶ 41 and *Hightower v. Hightower*, 10th Dist. Franklin No. 02AP-37, 2002-Ohio-5488, ¶ 22. "The valuation of property in a divorce case is a question of fact." *Id.* at ¶ 27, citing *Herron v. Herron*, 3d Dist. Allen No. 1-04-23, 2004-Ohio-5765, ¶ 23. "Accordingly, a trial court's decision pertaining to the valuation of property will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence." *Id.*, citing *Herron* at ¶ 23. *See also Snell v. Snell*, 5th Dist. Richland No. 13CA80, 2014-Ohio-3285, ¶ 50 ("Although the trial court's division of property is reviewed under an abuse of discretion standard, factual determinations such the value of the property subject to division are reviewed under a manifest weight of the evidence standard."), citing *Brown v. Brown*, 4th Dist. Pike No. 02CA689, 2003-Ohio-304.[1]

---

[1] We acknowledge that this court and other Ohio courts have applied an abuse-of-discretion standard of review to a trial court's valuation of property in a divorce case. *See, e.g.*, *Link v. Link*, 3d Dist. Mercer No. 10-11-21, 2012-Ohio-4654, ¶ 53 ("A trial court's valuation of marital property is only disturbed upon a showing of abuse of discretion."), citing *Stringfield v. Stringfield*, 7th Dist. Monroe No. 05 Mo. 16, 2007-Ohio-1116, ¶ 17. However, we have stated, "It is not an abuse of discretion when the trial court assigns value to [property] in an amount that is supported by competent, credible evidence." *Huelskamp*, 185 Ohio App.3d 611, at ¶ 27, citing *Osting v. Osting*, 3d Dist. Allen No. 1-03-88, 2004-Ohio-4159, ¶ 21. Therefore, the case law establishes that the ultimate inquiry under either the manifest-weight standard or the abuse-of-discretion standard is whether "competent, credible evidence" supports the trial court's valuation determination.

{¶18} The trial court "is not required to adopt any particular method of valuation." *Huelskamp* at ¶ 27, citing *James v. James*, 101 Ohio App.3d 668, 680 (2d Dist.1995). *See also Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-211, ¶ 41, citing *Huelskamp* at ¶ 27. "'Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances.'" *Dollries v. Dollries*, 12th Dist. Butler Nos. CA2012-08-167 and CA2012-11-234, 2014-Ohio-1883, ¶ 10, quoting *Baker v. Baker*, 83 Ohio App.3d 700, 702 (9th Dist.1992). "'[W]hen the parties present substantially different valuations of an asset,' [the trial court] may believe all, part, or none of any witness's testimony." *Huelskamp* at ¶ 27, citing *Covert v. Covert*, 4th Dist. Adams No. 03CA778, 2004-Ohio-3534, ¶ 29. "Furthermore, '[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony.'" *Id.*, quoting *DeWitt v. DeWitt*, 3d Dist. Marion No. 9-02-42, 2003-Ohio-851, ¶ 11.

{¶19} We begin our analysis by addressing whether the trial court's conclusion that the Property was marital property is supported by some competent, credible evidence. Contrary to Rickie's assertion that Alice bore the burden of proving that the Property was marital property, it was he who bore the burden of

demonstrating by clear and convincing evidence that because Donna gifted the Property to him only, the Property was separate property. *See Butler*, 2012-Ohio-6085, at ¶ 24.

{¶20} A review of the record reflects that Rickie and Alice married on June 18, 1990. (Doc. No. 15). They moved into the residence on the Property on January 1, 2007. (Feb. 25, 2014 Tr. at 197). On April 3, 2007, Donna executed a general warranty deed for a 70.2% interest in the Property "to Rickie L. Lotz, and Alice Lotz, married, for their joint lives, remainder to the survivor of them." (Defendant's Ex. F). (*See also* Feb. 25, 2014 Tr. at 192-193). That deed was recorded with the Auglaize County Recorder on August 13, 2007. (Defendant's Ex. F). (*See also* Feb. 25, 2014 Tr. at 193).

{¶21} Donna testified that "probably a few days before Mother's Day" in 2007, she "heard about that Alice had said that as soon as she got the deed she was going to sell the property and go to Georgia where her brother lives." (Feb. 25, 2014 Tr. at 195). After learning that, Donna had her counsel prepare a "right of first refusal agreement," which Donna, as "Grantee," executed on June 28, 2007, and which Rickie and Alice, as "Grantors," executed on July 5, 2007. (Plaintiff's Ex. 7); (Feb. 25, 2014 Tr. at 35, 124-126, 195-197, 243-244, 307-308). In it, Rickie and Alice granted to Donna "an exclusive right of first refusal to purchase the real property owned by Grantor [sic] and legally described on 'Exhibit A'

attached hereto and incorporated herein * * *." (Plaintiff's Ex. 7). The agreement provided that Donna could purchase for ten dollars the real property described in Exhibit A if Rickie and Alice received a bona fide offer to purchase it. (*Id.*); (Feb. 25, 2014 Tr. at 35). No "Exhibit A" was attached to Plaintiff's Exhibit 7, the two-page right of first refusal agreement. (*Id.*); (*Id.* at 125, 317). Alice testified that when she signed the right of first refusal agreement, it was a two-page document; however, she could not recall if "Exhibit A" was attached to it. (Feb. 25, 2014 Tr. at 248). Alice testified that the right of first refusal agreement was never recorded, and Plaintiff's Exhibit 7 does not bear a recorder's stamp. (*Id.* at 251); (Plaintiff's Ex. 7).

{¶22} On March 6, 2008, Donna executed a general warranty deed for the remainder of her interest in the Property "to Rickie L. Lotz and Alice Lotz, husband and wife." (Defendant's Ex. G). (*See also* Feb. 25, 2014 Tr. at 193-194). That deed was recorded with the Auglaize County Recorder on March 12, 2008. (Defendant's Ex. G).

{¶23} On July 19, 2008, Rickie and Alice executed a survivorship deed for the Property "to RICKIE L. LOTZ and ALICE L. LOTZ, husband and wife, for their joint lives, remainder to the survivor of them * * *." (Defendant's Ex. H). (*See also* Feb. 25, 2014 Tr. at 129). Rickie and Alice executed the survivorship deed so that they could obtain a home-equity loan against the Property. (Feb. 25,

2014 Tr. at 129, 250). Rickie and Alice obtained the home-equity loan together, and when they did, they did not notify the bank of the right of first refusal agreement. (*Id.* at 129-130, 159-160, 250-251). Donna never discussed the right of first refusal agreement with the bank from which Rickie and Alice obtained their home-equity loan. (*Id.* at 200).

{¶24} At the February 25, 2014 hearing, Alice's counsel asked Donna about her intent at the times she deeded the Property:

[Alice's Counsel]: Mrs. Lotz, there was obviously Exhibits F and G, the deeds, they speak for themselves, but was it your intent to deed the property to Rickie and Alice, wasn't it, Ma'am?

[Donna]: Originally, yeah, but not once I heard what Alice said.

[Alice's Counsel]: Oh, that you heard Alice wanted to move to Georgia?

[Donna]: Yeah, was going to sell it.

(*Id.* at 199). On direct examination, Donna testified that she gifted the Property to Rickie and Alice:

[Donna's Counsel]: You were the owner of property on 20086 Wapak-Cridersville Road; is that correct?

[Donna]: Yes.

[Donna's Counsel]: And you decided to give it as a gift to Rick and Alice; is that right?

[Donna]: Yes.

* * *

[Alice's Counsel]: Now the only property you gave to Rick and Alice consisted of the property at 20086 Cridersville Road, the seventy (70) acres; is that right?

[Donna]: Yeah.

(*Id.* at 307-309). According to Donna, the Property was transferred in two deeds "because of the gift tax law." (*Id.* at 312). Donna identified Third Party Exhibit A as "an ongoing thing" tallying the gifts she makes to her children and the gifts' respective values. (*Id.* at 310). Donna acknowledged that the total value of the gifts she has given to Rickie, as reflected on Third Party Exhibit A, includes "the entire gift of that seventy (70) acres to him." (*Id.* at 311).

{¶25} Finally, Rickie admitted on cross-examination that in his "affidavit of property," which he filed on May 22, 2012 when he filed his complaint for divorce, he listed nothing under the section for "separate property claims," which includes "gifts to one spouse only." (*Id.* at 130-131); (Defendant's Ex. C). (*See*

*also* Doc. No. 9). Rickie testified that he "didn't have an attorney present when [he] filled * * * out" his affidavit of property. (Feb. 25, 2014 Tr. at 130). And while he admitted that he was represented by counsel at the time he filed his complaint for divorce and his affidavit of property, his counsel "don't really look at it." (*Id.* at 131).

{¶26} Based on the evidence above, we conclude that the trial court's conclusion that the Property was marital property is supported by some competent, credible evidence. Rickie was required to prove by clear and convincing evidence that Donna gifted the Property only to him and intended to exclude Alice from acquiring any interest in the Property through the gift. *See Butler*, 2012-Ohio-6085, at ¶ 24. Notably, Rickie did not call Donna as a witness at the February 25, 2014 hearing—his only two witnesses were himself and Alice. Later at the hearing, Donna testified that she gifted the Property to Rickie *and* Alice. At one point, Donna testified that it was her intent to gift the Property to Rickie and Alice until she heard Alice wanted to sell the Property—something she learned after execution of the first deed but before execution of the second deed. The record reflects, however, that Donna addressed her concerns by executing the right of first refusal agreement. Indeed, the second deed transferred the Property to Rickie and Alice notwithstanding Donna's learning earlier that Alice wanted to sell the Property. Moreover, Rickie and Alice executed a survivorship deed to

transfer the Property to themselves so that they could obtain a home-equity loan. While we acknowledge that, under R.C. 3105.171(H), "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property," title can be some evidence of the parties' intent concerning the nature of the asset. *Strasburg*, 2010-Ohio-3672, at ¶ 20. Finally, even at the outset of this case, Rickie did not disclose the Property as separate property in his affidavit of property. *Shipley v. Shipley*, 5th Dist. Licking No. 02CA59, 2003-Ohio-17, ¶ 27 ("The parties treated the $50,000.00 as a joint gift and appellant did not even list the amount as separate property in her own affidavit."). Between Donna's testimony, the deeds transferring the Property from Donna to Rickie and Alice, Rickie and Alice's joint-survivorship deed, and Rickie's not listing the Property as separate property on his affidavit of property, the trial court's characterization of the Property as marital property is supported by some competent, credible evidence and therefore not against the manifest weight of the evidence.

{¶27} Not lost on us is Rickie's argument that the Property was not just a gift from Donna to him, but an advancement on his inheritance, which is a specific type of gift. "An advancement of inheritance is an irrevocable gift made by a person during his or her lifetime to an heir, by way of anticipation of the whole or part of the estate which the heir would receive in the event of the person's death."

-16-

*Dudley v. Dudley*, 5th Dist. Guernsey No. 07CA000027, 2008-Ohio-3760, ¶ 65, citing *King v. King*, 82 Ohio App.3d 747 (2d Dist.1992). *See also Crish v. Crish*, 7th Dist. Mahoning No. 02CA93, 2003-Ohio-4465, ¶ 14, citing *King* at 750, citing *Moore v. Freeman*, 50 Ohio St. 592, 593 (1893). "A gift is an advancement against a share of an estate only if it is declared in a contemporaneous writing by the decedent or acknowledged in writing by the heir to be an advancement." *Dudley* at ¶ 65, citing R.C. 2105.051. *See also Crish* at ¶ 14, citing R.C. 2105.051. Therefore, perhaps without realizing it, Rickie created an extra requirement for himself by arguing that the Property was not only a gift but also an advancement on his inheritance.

**{¶28}** Nevertheless, the distinction between the elements of an inter vivos gift and the elements of an advancement on inheritance are immaterial in this case. *See Pudlo v. Pudlo*, 3d Dist. Hancock No. 5-2000-29, 2001 WL 730986, *5 (June 29, 2001). As we discussed above, Rickie failed to prove by clear and convincing evidence that, under R.C. 3105.171(A)(6)(a)(vii), the Property was a separate gift to him only. Adopting the advancement-on-inheritance framework urged by Rickie, he likewise failed to prove by clear and convincing evidence the existence of a contemporaneous writing declaring that the Property was an advancement on his inheritance from Donna. First, Rickie did not call Donna as a witness or offer as an exhibit Donna's "ongoing" tally sheet recording her gifts to her children.

Second, there was no evidence that the tally sheet, which Donna offered as an exhibit, was prepared *contemporaneously* with the gift of the Property.

{¶29} We next address whether the trial court's valuation of the Property is supported by some competent, credible evidence. The trial court assigned a value of $440,000 to the Property and, after factoring in the $149,575.56 lien on the Property, found the Property's net value to be $290,424.44. (Doc. No. 124). Rickie argues that the trial court should have relied on the right of first refusal agreement to conclude that the Property's value was ten dollars. He also argues that the trial court erred when it concluded that it "had no power to determine the validity of the right of first refusal agreement previously executed between the parties." (Appellant's Brief at 7).

{¶30} Rickie mischaracterizes the trial court's conclusion regarding its ability to determine the validity of the right of first refusal agreement. The trial court's judgment entry reflects that, after detailing the "number of problems with the right of first refusal"—including its lack of an "Exhibit A," which the right of first refusal agreement references as describing the property subject to the right of first refusal—the trial court concluded "that the domestic relations division has no power to settle a contract dispute between the parties and has no power to hear a partition action to carve up the real estate interests of the parties, under these unusual circumstances." (Doc. No. 124).

**{¶31}** By concluding that it had "no power to settle a contract dispute between the parties" and "no power to hear a partition action to carve up the real estate interests of the parties," the trial court was merely saying that the issue of whether Donna would be entitled to purchase the Property for ten dollars if the Property is sold was not an issue before the trial court. Rather, as the trial court noted, its duty is to determine what property is marital and "assess and divide the values thereof." (*Id.*). To that end, the trial court examined the evidentiary value of the right of first refusal agreement and noted "a number of problems" with it. Indeed, the right of first refusal agreement introduced at trial did not contain the "Exhibit A" referenced in that agreement, so it is impossible to determine from the agreement to which property the agreement applies. And while the parties testified to their understanding of what property was subject to the right of first refusal agreement, the trial court was free, as it apparently did, to assign greater evidentiary weight to the appraisal—offered and identified *by Rickie* as Plaintiff's Exhibit 6—valuing the Property at $440,000. (Feb. 25, 2014 Tr. at 27-28). *See Huelskamp*, 185 Ohio App.3d 611, at ¶ 27.

**{¶32}** In support of his second assignment of error, Rickie relies heavily on *Lindsay v. Lindsay*, which is distinguishable from this case. 6th Dist. Sandusky No. S-11-055, 2013-Ohio-3290. In that case, the Sixth District Court of Appeals concluded that the trial court did not abuse its discretion "in finding the fair market

value of the family farm to be $234,000." *Id.* at ¶ 12. The Sixth District noted, "The purchase agreement gave the intervening parties a 20 year right of first refusal to purchase the property for $234,000. Thus, the property, encumbered, could not be sold on the open market for more than $234,000 at the time of the divorce." *Id.* The appellant apparently did not dispute the validity of the right of first refusal but argued that the trial court should have instead valued the property based on an appraisal in the amount of $385,000 that did not account for the right of first refusal. *Id.* at ¶ 10, 12. Unlike the right of first refusal in *Lindsay*, the right of first refusal agreement in this case was riddled with multiple evidentiary issues. Much like the Sixth District in *Lindsay* concluded that the trial court did not err in basing the property's value on a right of first refusal that was apparently free of evidentiary issues, we conclude that the trial court did not err in basing the Property's value on an appraisal rather than a right of first refusal agreement that it found problematic in multiple respects.

{¶33} For the reasons above, we conclude that the trial court's valuation of the Property is supported by some competent, credible evidence and therefore not against the manifest weight of the evidence.

{¶34} Rickie's assignments of error are overruled.

{¶35} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**